UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MADELAINE RIVERA | CASE NO.: 13-1080 |
| Plaintiff | |
| v. | |
| COMMONWEALTH OF PUERTO RICO, Secretary of Justice of the Commonwealth of Puerto Rico, GUILLERMO SOMOZA, Department of Education of the Commonwealth of Puerto Rico, Secretary of the Department of Education of the Commonwealth of Puerto Rico, EDWARD MORENO, VILMARIS COLÓN, LUIS ORENGO, his spouse JANE DOE and the Conjugal Partnership constituted by both, ELEUTERIO ÁLAMO, his spouse JANE ROE and the Conjugal Partnership constituted by both, INSURANCE COMPANY ABC, RICHARD DOE AND JOHN ROE | Plaintiff demands trial by jury |
| Defendants | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

COME NOW the Plaintiff, Madelaine Rivera, through the undersigned attorney, and very respectfully alleges and prays as follows:

I. <u>BRIEF INTRODUCTION</u>

1.     This is a Complaint alleging discrimination, harassment and retaliation, among others, from Plaintiff, Madelaine Rivera (hereinafter "Plaintiff" or "Madelaine Rivera"), a school teacher, against the Defendants that took place and continues to take

1

place based on religious discrimination and her filing of administrative and EEOC charges against the Department of Education and its employees.

## II. JURISDICTION

2.     This Honorable Court has subject matter jurisdiction pursuant to the Constitution of the United States, 28 U.S.C.A. sec. 1331.  This claim is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e-2, 2000e-3, the Constitution of the United Stated and 42 U.S.C. sec. 1983.  Supplementary jurisdiction is alleged for claims arising under the Constitution of Puerto Rico, P.R. Act 115 of December 20, 1991, 29 L.P.R.A. 194(a), *et seq.*, P.R. Act 100 of June 30, 1959, 29 L.P.R.A. sec. 146, *et seq.*, and Article 1802 and Article 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. sec. 5141 and 5142.

## III. VENUE

3.     The proper venue to bring this action is the United States District Court for the District of Puerto Rico since the events that give rise to this action occurred within the District of Puerto Rico, 28 U.S.C.A. 1391.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.     Plaintiff filed a discrimination charge before the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued the notice of Right to Sue on October 17, 2012.  The Right to Sue letter was received by the Plaintiff on November 5, 2012.  See exhibit 1.  Thus, this action is timely filed and has complied with the exhaustion of remedies requisite.

## V. PARTIES

5.      Plaintiff Madelaine Rivera is of legal age, married and resident of Trujillo Alto, Puerto Rico. At all material times relevant to this complaint, Plaintiff has been residing in Puerto Rico.

6.      At all times relevant to this Complaint the Defendants were the Commonwealth of Puerto Rico, through its Secretary of Justice, Guillermo Somoza. The Commonwealth of Puerto Rico represents the Department of Education which is an agency within the Puerto Rican government that formulates and implements the public policy and the employer of Plaintiff.  Codefendant, Edward Moreno, the Secretary of the Department of Education of the Commonwealth of Puerto Rico at all times relevant to this Complaint, is sued in his official capacity.

7.      Defendant Vilmaris Colón was the Director of the Manuel Cepero School at all times relevant to this Complaint.  Upon information and belief, she is of legal age, single and a resident of Puerto Rico.  She is sued in her personal and official capacity.

8.      Defendant Luis Orengo was the School Superintendent of the San Juan School District II, at all times relevant to this Complaint.  Upon information and belief, he is of legal age, married, and a resident of Puerto Rico.  He is sued in his personal and official  capacity.  Defendants, Jane Doe is the spouse of Luis Orengo and the Conjugal Partnership constituted between them are sued in their personal capacity. Upon initial discovery, the identity of such persons will be ascertained and the caption of the case will be amended for inclusion of these Defendants.

9.      Defendant Eleuterio Álamo was the Regional Director of the Department of Education at all times relevant to this Complaint. Upon information and belief, he is of legal age, married and a resident of Puerto Rico. He is sued in his personal and official

capacity.   Defendants, Jane Roe is the spouse of Eleuterio Álamo and the Conjugal Partnership constituted between them are sued in their personal capacity.   Upon initial discovery, the identity of such persons will be ascertained and the caption of the case will be amended for inclusion of these Defendants.

10.   Insurance Company ABC is, upon information and belief, an insurance company providing coverage to the Puerto Rico government for this type of employment claims committed by its employees or agents of the Department of Education.   At this time, the identity of this insurance company is unknown.   Upon initial discovery, the identity of the company will be ascertained and the caption of the case will be amended for inclusion of this Defendant.

11.   Richard Doe and John Roe are natural persons or corporations who at all relevant times were responsible for the acts alleged in the Complaint and which identities at this time are unknown by the Plaintiff.   Upon initial discovery, the identity of such persons will be ascertained and the caption of the case will be amended for inclusion of these Defendants.

## VI. FACTS COMMON FOR ALL CAUSES OF ACTION

12.   Plaintiff re-alleges by reference each and every paragraph contained in the preceding allegations and incorporates them herein as if fully set forth.

13.   Plaintiff, Madelaine Rivera has been employed as a teacher by the Puerto Rico Department of Education since August 2005.

14.   Plaintiff always received satisfactory evaluations by her supervisors during her tenure from 2005 through 2010, when co defendant Vilmaris Colón started as a Director of Manuel Cepero public school.

15.   Defendants, Commonwealth of Puerto Rico, through its Secretary of Justice, Guillermo Somoza, represents the Department of Education of the Commonwealth of Puerto Rico which is an agency within the Puerto Rican government that formulates and implements the public policy and the employer of Plaintiff. Codefendant, Edward Moreno was the Secretary of the Department of Education of the Commonwealth of Puerto Rico.  At all times relevant to this Complaint they have been the employers of Plaintiff.

16.   Defendants, Vilmaris Colón, Luis Orengo and Eleuterio Álamo are all employees of the Department of Education.  Codefendants acting under color of law, and in their official capacities as officers of the Department of Education conspired to violate Plaintiff's legal and constitutionally protected rights.  As will be described and alleged hereinafter, these codefendants openly practiced and manifested religious beliefs during working hours and while acting as agents of the state and contrary to the United States and the Commonwealth of Puerto Rico's Constitutions.   To this day, Defendants continue to discriminate and retaliate against the Plaintiff for the reasons set forth herein.

17.   Plaintiff was an open and known atheist, a fact known by co defendants.

18.   Co defendants were open and known Christians who performed religious acts and activities during working hours.

19.   In August 2009, Madelaine Rivera began working in the Manuel Cepero School, which is part of the Regional Office of San Juan.  There, she taught the sixth grade students.

20.   During the August-December 2010 semester, she was supervised by Carmelo Rivera who gave her excellent evaluations.

21.   Vilmaris Colón ("the Director") began to work as Director of the Manuel Cepero School in January 2011.

22.   Since April 2011, Plaintiff started having problems with the School Director, Vilmaris Colón.   Such problems arose, initially, from the School Director's illegal request, which required Plaintiff to raise funds personally for the graduation of her sixth grade students.   Such graduation was already planned by the parents of the sixth grade students and teachers are expressly prohibited from collecting funds for the same pursuant to the Department of Education's regulations.

23.   Vilmaris Colón wanted an expensive graduation, different from the one already planned by the student's parents.   When Plaintiff refused to violate the Department of Education's norms, the Director began to take illegal actions against the Plaintiff.

24.   Vilmaris Colón informed to Luis Orengo and Eleuterio Álamo that Plaintiff was not complying with her duties as a sixth grade teacher, alleging that the sixth grade graduation did not take place, when in fact it did.

25.   During May 2011, without any reasonable foundation and illegally, Vilmaris Colón implemented a school reorganization that resulted in altering the teachers' assigned classrooms.   This reorganization had the sole purpose of adversely affecting the position of Plaintiff as a sixth grade teacher and relocate her to work with the most difficult class at the school, to wit: the fourth grade.

26.   Plaintiff challenged this reorganization twice because it did not comply with the Department of Education's regulations and because the same was done without cause and to adversely affect her employment.

27.   After Plaintiff filed her administrative complaints, the Director informed her that she was going to leave her teaching the sixth grade.

28.   During the end of May beginning of June 2011 co defendants Luis Orengo and Eleuterio Álamo summoned the Plaintiff to a meeting to discuss her complaints.

29.   The meeting was held at the administrative offices of the Department of Education.  In that meeting, both Codefendants, Alamo and Orengo, told Plaintiff that she was not qualified to occupy the sixth grade position because no graduation was held, even though Plaintiff told them that the graduation took place in May. Codefendants threatened Plaintiff with dismissal because of her complaints.  Plaintiff told both Codefendants that the reorganization was due to her complaints and her refusal to violate the Department's norms and regulations.

30.   No investigation or action was taken by the Department of Education either by its Secretary or by any other officer regarding the illegal reorganization done by Vilmaris Colón or her request for Plaintiff to personally collect funds for the graduation ceremony.

31.   Although Vilmaris Colón had told Plaintiff that she would leave her teaching the sixth grade, when the next school year began in August 2011, Plaintiff was assigned to the fourth grade.  This class was notoriously challenging.  Not only was the classroom consistent of 29 students, but also 16 of these students had been diagnosed with special needs and Plaintiff is not a special education teacher.

32.   This action was obviously discriminatory and in retaliation of plaintiff's administrative complaint challenging the illegal reorganization performed by Colón.

33.   During the month of October 2011, Ms. Vilmaris Colón attempted an illegal evaluation on the Plaintiff.  Pursuant to the Department of Education's regulations, the

7

Director was supposed to schedule with the teacher a date and time to conduct the evaluation.  However, the Director just came to Plaintiff's classroom on October 3, 2011 and informed her that the evaluation was going to take place.  Plaintiff firmly objected to this illegal act from co defendant Colón.

34.   During the school year 2011-2012, Plaintiff was subjected to verbal harassment and physical abuse by various students and the student's mothers.

35.   On October 18, 2011 a special needs student was interrupting Plaintiff's class and she ordered him to leave the classroom.  Once outside, this student proceeded to call her "puta, cabrona, piojosa, pasate la plancha!!!!!" ("Whore, motherfucker, lice head, use the hair iron").  Later that day, the student threw a soda can against Plaintiff, the can hit a puddle on the ground and the water splashed the special education employee.  This incident was reported to the police but they informed Plaintiff that it was up to the school to take actions against the student.  Never did the Director take any action against them while Plaintiff was still in the school.

36.   Vilmaris Colón began a campaign to informing Plaintiff's students and their parents that the Plaintiff did not believe in God.  Various students and parents approached Plaintiff and the school's social worker to tell them that the Plaintiff was a bad person because she did not believe in God and that she was going to get fired because of it.

37.   On November 2, 2011 a student came to the Plaintiff and asked her if she believed in God because said student had been told that Plaintiff was an atheist and that was bad.  Plaintiff answered him that that was a private matter and that they were not going to talk about it because the class was more important.

38.   Close to this date several students and parents also contacted Maria Socorro Pagán (the school's social worker) and told her that Plaintiff was an atheist.

39.   Plaintiff has been discriminated against by Codefendants because of her religious beliefs and Vilmaris Colón disseminated that she was an atheist.  The ongoing harassment, change of grade, hostile work environment, retaliation, and all the adverse employment actions taken against Plaintiff were based on religious discrimination and retaliation.

40.   The harassment continued and on November 15, 2011 a student told Plaintiff "Shut up stupid.  I am going to call my mother for her to rip off your face!"

41.   At the end of November 2011 again Vilmaris Colón went to Plaintiff's classroom unannounced to evaluate her.  The Director sat in her classroom and started mocking her, acting as a little girl, swinging her legs.   Plaintiff told her that she was being disrespectful.  This unannounced visit and the attempt to perform an evaluation was illegal and was done in a way to adversely affect Plaintiff's record.

42.   Furthermore, Plaintiff informed Vilmaris Colón that one of the students was bullying students of her fourth grade class, placing his genital areas in the other students' backs, hitting her students in their genitals, etc.  Again, the defendants did not perform an investigation and no disciplinary action was ever taken against the students. They were left without supervision and free to continue their disrespect and harassing conduct against the Plaintiff.

43.   Close to this date, on October 2011, co defendant Vilmaris Colón convinced several parents to file administrative complaints against Plaintiff.  These were the parents of children with notorious disciplinary problems.  Vilmaris Colón also filed an complaint against Plaintiff.  Plaintiff did not learn of these complaints until March 2012.

44.   In December 2011 a student told Plaintiff that the Director informed such student that she was going to fire Plaintiff because Plaintiff failed to put up Christmas ornaments, again harassing and discriminating against because of her religious beliefs and in her attempt to impose the Director's religious beliefs at the school.

45.   In December 2011 the Director erased the grades of various students that had failed Plaintiff's class.  Plaintiff brought the evidence to Luis Orengo and expressed the situation that was happening at the school.  Luis Orengo did not taken any action.

46.   On December 20, 2011, Plaintiff was summoned to a meeting by Vilmaris Colón.  The social worker was supposed to attend this meeting but the Director used this day because the Social Worker was absent.

47.   During that meeting the Director informed Plaintiff that the mother of Joshua Meléndez had filed an administrative complaint against Plaintiff for institutional abuse ("maltrato institucional").  This was a student who had severe disciplinary problems at the school, all ignored by Vilmaris Colón.  In that meeting several mothers were yelling at Plaintiff.  Co defendant  Vilmaris Colón allowed it.

48.   Plaintiff received a reprimand from Vilmaris Colón, motivated by the fact that Plaintiff did not attend the school's Christmas party.

49.   On January 2012, the English teacher, Ms. Diana Collazo, informed Plaintiff that Vilmaris Colón approached her to convince her to testify against Plaintiff in the investigation of the complaint filed by Joshua Meléndez's mother.  Ms. Collazo rejected Ms. Colón's request.

50.   On January 19, 2012 another student came to Plaintiff and informed her that Ms. Colón told her that Plaintiff was an atheist and that being atheist was bad and that she (Ms. Colón) was a good person because she believed in God.

10

51.   On January 31, 2012, Ms. Colón had a meeting with parents of the fourth grade and spoke about Plaintiff and also requested the parents to write and sign negative things about Plaintiff.  As a result of that meeting, Plaintiff issued a letter dated January 31, 2012.

52.   During the following months the disrespectful conduct of the students against Plaintiff continued.

53.   As a result of the religious discrimination and persecution against Plaintiff, on March 6, 2012 several mothers made a demonstration in front of the school alleging that Plaintiff was abusing their sons and daughters.  The demonstration was attended by news reporters and the same was transmitted in the Puerto Rico local news.

54.   Days prior to the demonstration the mothers were in a meeting with Ms. Vilmaris Colón.  One of the persons that attended the demonstration was a Ms. Nemrac who had accused Plaintiff in the past of getting the cards read and not believing in God. None of the mothers whose children had good conduct were there.  On that very same day and because Plaintiff had learned of the demonstration prior to it, Plaintiff reported to the Department of Education's Regional Office of San Juan II, where a letter was already prepared assigning the Plaintiff to the Regional Office.

55.   As a result of the discrimination and retaliation, Plaintiff was transferred without duties to the Regional Office of San Juan II on March 6, 2012.

56.   Other teachers against whom complaints had been filed were never transferred to the Regional Office and were allowed to continue working at their respective schools pending the investigations.

57.   Once in the Regional Office, Plaintiff duties were eliminated and she was assigned to make copies.  Plaintiff was mocked and humiliated.  The religious

harassment continued and Plaintiff felt that Ms. Colón was and still is protected because of her religious beliefs which are the same of her supervisors, co defendants Luis Orengo and Eleuterio Álamo.

58.   Plaintiff tried to file a claim at the State Insurance Fund, but the defendants did not agree to fill out the SIF's form.

59.   While Plaintiff was assigned at the Regional Office of San Juan II, Luis Orengo and Eleuterio Álamo performed several religious services in staff meetings, Bible readings and prayers.  The staff of the Regional Office of San Juan II, directed by these two Codefendants, held sketches during Holy Week and other dates, where personnel from the Department of Education dressed as biblical figures. All of these activities were held during working hours and Plaintiff's assistance was mandatory.

60.   In July 2012 plaintiff filed the EEOC charge.

61.   In August 2012, Plaintiff was transferred to another school and assigned as math teacher for grades fourth through sixth.  This transfer was done in spite of the fact that no investigation was performed or results were given as to the administrative complaints that were filed against Plaintiff by some of the students and immediately after the EEOC charge was filed.

62.   Upon her arrival, the Director, Julia Figueroa, asked the Plaintiff to change to the first grade, which at the time of the Director's request had 22 students.  Plaintiff agreed.

63.   The air conditioning unit at the classroom assigned to the plaintiff was not working.  The Director refused to buy a new unit and Plaintiff bought one unit with her own money.

64.   Upon Plaintiff's commencement in the first grade, the classroom was filled with 28 students, including 9 students of special education.

65.   The Plaintiff was informed that a new teacher for the same grade was supposed to be assigned a classroom of reduced amount of students.  As a direct result of this new teacher's assignment, Plaintiff had double the amount of students compared with a similarly situated teacher.

66.   Plaintiff was informed that the amount of students in Plaintiff's classroom was a direct order from the Regional Office of San Juan II and Mr. Luis Orengo.  Thus, Luis Orengo and Eleuterio Álamo continued their campaign to adversely affect the working conditions of Plaintiff after her transfer in a clear discriminatory and retaliatory action against the Plaintiff.

67.   More recently, in December 2012, the Plaintiff was called to the Director's office.  She was accused by the Director of ordering the students not to appear in school.  The Director was screaming at the Plaintiff.  When the Plaintiff was about to leave the meeting the Director, again, yelled at her and told the Plaintiff that "she was tired of her stupidities", and that she was "the devil."

68.   Codefendants actions continue to adversely affect Plaintiff and her working conditions.   Plaintiff has been discriminated because of her religious beliefs and because of the fact that she has filed several administrative complaints against the Codefendants and her filing of the EEOC charge, among other causes of action stated herein.

69.   Codefendants acted with gross negligence, willfully and with reckless regard of the law in harassing and discriminating against the Plaintiff.  The harassment and discrimination against the Plaintiff constitute a willful violation of the Constitution of

the United States and Puerto Rico, as well as the applicable laws of the United States and Puerto Rico, and as such, Plaintiff is entitled to recover punitive, double and compensatory damages.

70. Before the events described herein, Plaintiff never suffered of any emotional situation.  However as a result of the events described herein, Plaintiff has suffered and continues to suffer tremendously due to the discriminatory, harassing and illegal actions of Codefendants.  Plaintiff has suffered considerable damages, including anxiety, insomnia physical distress, depression, loss of self-esteem, other emotional damages and  economic damages.

71. For the purposes of all causes of action alleged hereinafter, Plaintiff sustains that there has been a continuing violation of her federally and stated protected rights as the discrimination and retaliation has continued to this date.

VII.   FIRST CAUSE OF ACTION
*Discrimination and Retaliation and under Title VII of the Civil Rights Act*
*FEDERAL STATUTE CAUSE OF ACTION*

72. Plaintiff re-alleges by reference each and every paragraph contained in the preceding allegations and incorporates them herein as if fully set forth.

73. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's […] religion […]".  Said statute also prohibits employers to "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's […] religion […]."U.S.C. § 2000e-2(a)(1).

14

74.  Said Act, at section 2000e-3, also states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees […] because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

75.  A hostile work environment exists in violation of Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

76.  Plaintiff has established a prima facie case of religious discrimination given that she belongs to a protected group, she has being subjected to harassment, discrimination, retaliation and adverse employment actions and has suffered damages due to the Defendant's illegal actions, and there is a causal nexus between the damages and the illegal employment actions. Defendants individually and jointly have conspired and acted in concerted activity to deprive Plaintiff of her constitutionally protected rights under Title VII.

77.  Plaintiff is entitled to damages and any other relief deemed proper by this Honorable Court under Title VII and all codefendants are jointly liable for the damages suffered by the plaintiff, as requested herein.

VIII.   SECOND CAUSE OF ACTION
*Violation of the Constitution of the United States*
*42 U.S.C. sec. 1983*
*FEDERAL STATUTE CAUSE OF ACTION*

78.   Plaintiff re-alleges by reference each and every paragraph contained in the preceding allegations and incorporates them herein as if fully set forth.

79.   The Fourteenth Amendment of the United States Constitution provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

80.   Defendants individually and jointly have conspired and acted in concerted activity to deprive Plaintiff of her constitutionally protected rights under the Fourteenth Amendment.   Plaintiff has suffered damages as the Defendants have treated her less favorably because of her religion and have treated similarly situated employees more favorably because they share the Defendants' beliefs.

81.   A claim under Section 1983 provides a private cause of action against any person who, acting under the color of state law, deprives any citizen of his or her rights, privileges or immunities secured by the U.S. Constitution. 42 U.S.C. sec. 1983. Section 1983 claim is predicated on Defendants' alleged violations of the First Amendment, as well as the Equal Protection and Due Process clauses of the Fourteenth Amendment.

82.   The Plaintiff has established a prima facie case to the extent that : 1) the Defendants acted under color of state law; (2) that she was deprived of federally

protected rights, privileges, or immunities; and (3) that Defendants' alleged conduct was causally connected to the Plaintiff's deprivation. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989).

83.   Also Plaintiff has established that the alleged facts indicate that, compared with others similarly situated, she was selectively treated "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995).

84.   Plaintiff is entitled to damages and any other relief deemed proper by this Honorable Court under section 1983 and the United States Constitution and all codefendants are jointly liable for the damages suffered by the plaintiff.

IX. THIRD CAUSE OF ACTION
*Discrimination and Retaliation under P.R. Act 100*

85.   Plaintiff re-alleges by reference each and every paragraph contained in the preceding allegations and incorporates them herein as if fully set forth.

86.   Law No. 100, *supra*, provides in its Article 1 that "[a]ny employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms, rank, conditions or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employment opportunities, or to affect his status as employee, on the basis of [...] religion [...] shall incur civil liability... and shall also be guilty of a misdemeanor.  29 L.P.R.A. § 146.

87.   Defendants individually and jointly have conspired and acted in concerted activity to deprive Plaintiff of her constitutionally protected rights under the Act 100.

88.  Plaintiff is entitled to damages and any other relief deemed proper by this Honorable Court under Act 100 and all codefendants are jointly liable for the damages suffered by the plaintiff, as requested herein.

X.  FOURTH CAUSE OF ACTION
*Retaliation under P.R. Act 115*

89.  Plaintiff re-alleges by reference each and every paragraph contained in the preceding allegations and incorporates them herein as if fully set forth.

90.  P.R. Act 115, 29 L.P.R.A. § § 194a, states that no employer may "discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law."

91.  Plaintiff has suffered retaliation, harassment and worsened working conditions due to the fact that she filed several administrative complaints, verbal complaints, as well as the EEOC discrimination charge.  Defendants individually and jointly have conspired and acted in concerted activity to deprive Plaintiff of her rights under Act 115.

92.  Plaintiff is entitled to damages and any other relief deemed proper by this Honorable Court under Act 115 and all codefendants are jointly liable for the damages suffered by the plaintiff, as requested herein.

XI. <u>FIFTH CAUSE OF ACTION</u>
*Damages under Articles 1802 and 1803 of the P.R. Civil Code*

93.   Plaintiff re-alleges by reference each and every paragraph contained in the preceding allegations and incorporates them herein as if fully set forth.

94.   Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. sec 5141, *et seq.*, is the tort statute under the Commonwealth of Puerto Rico law.   Under this article, a tort action arises when there has been a violation of a right or an omission of a duty required by law. Under Art. 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sec. 5141, the person who, through fault or negligence, causes damage to another shall be obliged to repair the damage so done. Article 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. sec 5142, *et seq.*, extends the liability to the employer for the employee's actions or omissions.

95.   Defendants are individually and jointly liable and have incurred in negligent and/or willful acts or omissions against the Plaintiff. The Commonwealth of Puerto Rico is liable for the negligent and/or willful acts of its employees.

96.   Plaintiff is entitled to damages and any other relief deemed proper by this Honorable Court under Articles 1802 and 1803 of the Puerto Rico Civil Code and all codefendants are jointly liable for the damages suffered by the plaintiff, as requested herein.

XII.   <u>REQUEST FOR ATTORNEYS' FEES AND COSTS</u>

97.   Plaintiff requests that this Honorable Court award attorney's fees, including litigation expenses, and the costs of this action pursuant to Title VII, 42 U.S.C. 1988, Act 100, Act 115, P.R. Civil Code Articles 1802 and 1803 and any other applicable statutes.

### XIII.   DEMAND FOR TRIAL BY JURY

98.   Plaintiff demands a trial by jury.

### XIV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court:

a.   Compensatory damages in the amount of $3,000,000.00 under Title VII for religious discrimination;

b.   Compensatory damages in the amount of $3,000,000.00 under Title VII for retaliation;

c.   Compensatory damages in the amount of $2,000,000.00 under Act 100, and double damages pursuant to law;

d.   Compensatory damages in the amount of $2,000,000.00, and double damages under Act 115;

e.   Compensatory damages in the amount of $2,000,000.00 under Articles 1802 and/or 1803 of the Puerto Rico Civil Code;

f.   Double and punitive damages;

g.   Prejudgment and post-judgment interests;

h.   Preliminary and permanent Declaratory and Injunctive relief;

i.   Award Plaintiff's attorneys fees, including litigation expenses and the costs of this action; and

j.   Grant such other relief as may be just and proper.

WHEREFORE, it is respectfully requested from this Honorable Court to consider and grant the instant Complaint and all remedies requested therein, and also to award Plaintiff a reasonable amount for legal costs and attorney's fees.

In this day, February 4th, 2013.

RESPECTFULLY SUBMITTED.

/s/ Lilliam E. Mendoza-Toro
Lilliam E. Mendoza-Toro
U.S.D.C. Bar No. 205211
Támesis 1564, Urb. El Paraíso
San Juan, P.R. 00926
Tel/fax 787-772-3589 Cel. 787-502-1089
Email: mendozatorolaw@aol.com
Counsel for the Plaintiff

/s/ Melissa Figueroa Del Valle
Melissa Figueroa Del Valle
USDC Bar No. 225409
Urb. Parque Mediterráneo F5
Guaynabo, Puerto Rico 00966
Tel/fax (787) 782-4791
Email: mely406@yahoo.com
Counsel for Plaintiff